# EXHIBIT B

# SAFE HOME SECURITY, INC.

55 Sebethe Drive  Suite 201  Cromwell, CT 06416  Tel 800-833-3211

## AGREEMENT FOR MONITORING AND INSTALLATION OF SECURITY SYSTEM

1. This agreement is entered into this 8 day of Apr 2015 between SAFE HOME SECURITY, INC.
Hereinafter referred to as _____ and ____Carol Ward____ _____ telephone (     )     hereinafter referred to as the "Client"

2. **SERVICES AND EQUIPMENT:** Company agrees to provide and client agrees to pay for service and/or equipment as described below.

3. **MONITORING:** Company agrees to provide monitoring services for a period of 60 months from the above date. This agreement shall automatically renew for a period of 12 months at the end of such primary term or any renewal term thereafter unless the client shall give written notice to the Company sixty (60) days prior to the end of the primary term or any renewal term. Upon renewal, service will be billed at then-current monitoring fees. Client may cancel this agreement before the end of the primary or renewal term only upon sale and relocation from the above property address. Client must provide written notice to the Company 60 days prior to such cancellation, return any Company owned property, and provide the name, address, and telephone number of the new owner(s) of the aforementioned property. Should the client cancel under the above stated terms, the difference between the number of months of monitoring paid and 30 months shall be immediately due and payable to the company.

4. **MONITORING CHARGES:** Monthly monitoring charge of $ 26.99 plus __ % sales tax of $___ for a total of $_____ is payable in advance and shall be paid [ ] Annually [ ] Quarterly (if paid quarterly an additional service charge of $3.00 per quarter shall apply).
_____ [ ] The above monitoring charge includes **Parts and Labor Warranty** for an additional $_____ per month.
Client's Initials
_____ [ ] The above monitoring charge includes **Parts Only Warranty** for an additional $_____ per month.
Client's Initials

5. **ELECTRONIC FUNDS TRANSFER (EFT) AUTHORIZATION:** The client authorizes the Company to make EFT's from the Client's account for the amount of the monitoring or other alarm charges. The Company is not liable in any way for erroneous bill statements or incorrect debits to the Client's account and should an error occur, the Company's only responsibility is to correct it when and if it receives notice of the error from the Client. The Client further agrees that should any direct payment be returned, the client shall be liable for a $20.00 returned payment fee.

_____
Client's Initials

6. **EQUIPMENT TO BE INSTALLED**

| ITEM# | QUANTITY | DESCRIPTION | ITEM# | QUANTITY | DESCRIPTION |
|---|---|---|---|---|---|
| ___ | ___ | _____ | ___ | ___ | _____ |
| ___ | ___ | _____ | ___ | ___ | _____ |
| ___ | ___ | _____ | ___ | ___ | _____ |
| ___ | ___ | _____ | ___ | ___ | _____ |

Installation Start Date:_____   Installation Completion Date:_____

7. **EQUIPMENT CHARGES:**   Equipment charge of $_____ plus ___% sales tax of $_____
For a total of $_____
DEPOSIT: $_____
BALANCE DUE $_____
[ ] Upon installation _____    [ ] Payable monthly _____ for a period of ___ months at $_____ per month.
Client's Initials                         Client's Initials
includes applicable finance charges of _____%

8. **ADDITIONAL PROTECTION:** The need for additional protection of _____ has been explained to the Client declines the offer of additional protection.

_____
Client's Initials

9. **SERVICE OR REPAIRS TO CLIENT'S SYSTEM:** Unless otherwise indicated, the Client understands that the monitoring fee covers monitoring service and agrees to pay the Company for all service or repairs to his system separately. Client hereby agrees to periodically test Client's system and be aware of its operational status in accordance with the operating instructions.

10. **ENTIRE AGREEMENT:** It is agreed to and understood by the parties that this agreement constitutes the entire agreement by the parties and no verbal understandings changing or modifying any of the terms of this agreement. This agreement may not be change, modified or varied except and signed by an authorized representative of the Company. Client hereby acknowledges that he has read, received a copy of, and understands agreement, including the attached Notice Of Cancellation.

11. **INVALID PROVISIONS:** If any of the terms or provisions of this agreement shall be determined to be invalid or inoperative, all of the terms and provisions shall remain in full force and effect.

12. **YOU, THE BUYER, MAY CANCEL THIS TRANSACTION AT ANYTIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS** THE DATE OF THIS TRANSACTION. SEE THE ATTACHED NOTICE OF CANCELLATION FOR AN EXPLANATION OF T

Written By: _Jamie Platt_____    Client X _Carol Ward_____
pproved By: _____    Client: _____
proval Date: _____    Client: _____

**READ TERMS AND CONDITIONS ON REVERSE SIDE**

e Numbers:  FL EF20000405   CT 00180152   MA 1584C   RI 7625   NY

13. **INDEMNIFICATION** - Notwithstanding any other provisions of this agreement, the Client agrees to and shall indemnify and save harmless the Company, its employees and agents for and against any claims, suits, losses, demands, and expenses arising from any death or injury or any other harm to any person, whether caused by the negligence of the Company, its officers, agents, employees, or any other cause which results in any way from the failure on the part of the Company to perform any of its obligations or from the failure of the system to operate properly.

14. **LIMITED WARRANTY** - except as specifically set forth hereinafter, Company shall not be obligated to provide service of any type to the system for the benefit of the Client. If Client wishes the system to be serviced by the Company beyond the limited warranty and the extended warranty periods, such agreement shall be separately negotiated by the parties. The agreement does not cover damage or needed service resulting from accidents, preexisting equipment, Acts of God, alterations, misuse, tampering, abuse or trouble due to power failure, ordinary maintenance due to wear and tear and any cause beyond the control of the Company. At the Company's option a fee may be charged for any unnecessary service created by the Client. Any part of the system installed under this agreement which proves to be defective in material or workmanship within three (3) months of the date of completion of the installation will be repaired or replaced with a new or functionally operative part with no cost to the Client for materials or labor. Service under this warranty is available by simply contacting the Company, 55 Sebethe Drive Suite 201 Cromwell, CT 06416 Tel 800-833-3211.

15. **COMPANY NOT AN INSURER AND LIQUIDATED DAMAGES** - It is understood and agreed: That the Company is not an insurer. That insurance, if any, shall be obtained by the Client; that the payments provided for herein are based solely upon the value of the services set forth herein and are unrelated to the value of the Client's property or the property of others located on the Client's premises; that the Company makes no guaranty or warranty, including any implied warranty of merchantability or fitness that the equipment or services supplied will avert or prevent occurrences or the consequences therefrom which the system is designed to detect or avert. Client acknowledges that it is impractical and extremely difficult to fix the actual damages, if any, which may proximately result from the failure to perform any of the obligations herein, or the failure of the system to properly operate with resulting loss to the Client because of, among other things, a] The uncertain amount of the value of the Client's property or the property of others kept on the premises which may be lost, stolen, destroyed, damaged, or otherwise affected by occurrences with which the system is designed to detect or avert. b] The uncertainty of the response time of any police or fire department, should the police or fire department be dispatched as a result of a signal being received or an audible device sounding. c] The inability to ascertain what portion, if any, of any loss would be proximately caused by the Company's failure to perform or by failure of its equipment to operate, d] The nature of the service to be performed by the Company. Client understands any agrees that if the Company should be found liable for losses or damages due to the failure of the Company to perform and of the obligations herein, including, but not limited to installation, maintenance or service or the failure of the system or equipment in any respect whatsoever, the Company's liability shall be limited to two hundred fifty ($250.00) dollars as liquidated damages and not as a penalty and this liability shall be exclusive; and that the provisions of this section shall apply if loss or damage, irrespective of cause or negligence, active or otherwise, of the Company, its agents, assigns, or employees. If Client wishes the Company to assume a limited liability in lieu of the liquidated damages as hereinabove set forth, Client may obtain from Company a limitation of liability by paying an additional monthly service charge to the Company. If the Client elects to exercise this option, a rider shall be attached to this agreement setting forth the terms, conditions, and the amount of the limited liability, and the monthly charge. Such rider and additional obligation shall in no way be interpreted to hold the Company as an insurer.

16. **COMMUNICATION TO AUTHORITIES** - The Client understands that if a digital communicator is installed under this agreement, it uses standard telephone lines as the transmission mode of sending signals. Client also understands that the Company does not receive signals when the transmission mode is, or becomes, non-operational and that the signals from the digital communicator cannot be received if the transmission mode is cut, interfered with, or otherwise damaged. The Client furthermore understands that the Company assumes no liability for failure of the Client's system as a result of the transmission mode becoming non-operational.

17. **INTERRUPTION OR DELAY OF SERVICE** - The company assumes no liability for delays in installation of the system, or interruption of service due to strikes, riots, floods, fires, acts of God or any causes beyond the control of the Company. The Company will not be required to supply service to the Client while interruption of the service due to any such cause shall continue.

18. **THIRD PARTY INDEMNIFICATION** - Client agrees to and shall indemnify, defend and hold harmless the Company, it's employees and agents for and against all claims, lawsuits, and losses which claim and/or lawsuit is brought or loss sustained by parties and entities other than the parties to this agreement (herein referred to as third parties). This provision shall apply to all claims, lawsuits, or damages caused by Company's negligent performance, whether active or passive and to all claims based upon defects in design, installation, maintenance, monitoring, operation or non-operation of the alarm system, whether those claims be based upon negligence, active or passive, warranty, or strict or product liability on the part of the Company, its agents, servants, or employees. This agreement by Client to indemnify the Company against third party claims as hereinabove set forth shall not apply to losses, damages, expenses resulting in injury or death to third persons, which losses, damages, expenses, and liability are solely and directly caused by the acts of said employee.

19. **SUBROGATION** - Client hereby releases, discharges and agrees to hold the Company harmless from any and all claims, liabilities, damages, losses or expenses arising from or caused by any hazard covered by insurance in or on the premises of Client whether said claim is made by Client, his agents, or insurance company or by any other parties claiming under or through Client. Client agrees to indemnify the Company against, defend and hold the Company harmless from any action for subrogation which may be brought against the Company by and insurer or insurance company or its agents or assigns including the payment of all damages, expenses, costs and attorney's fees.

20. **CANCELLATION DUE TO CATASTROPHE** - This contract may be canceled without notice at the option of the Company, in case the Company's central station, connecting wires or equipment within the Client's premises are destroyed by fire or other catastrophe, or so substantially damaged that it is impractical to continue service and may likewise be cancelled at the option of the Client, in the event the Client's premises are so destroyed or seriously damaged.

21. **WARNING AND TESTING OF EQUIPMENT** - Smoke detectors, panic buttons, medical pendants, and other electronic components operate off A.C. (electric) or battery power. If batteries become dead or electric power is lost, smoke detectors and other components will not operate and the alarm will not sound or communicate to the central station. The system and all components should be tested by the Client at least twice monthly through to the central station to insure the system is functioning. If the Client discovers malfunctions or desires explanation on system testing, he should contact the Company's service department for immediate service. Thee Company assumes no liability for periodic testing of the system.

22. **FAILURE TO MEET PAYMENT** - In the event of a failure to meet a scheduled payment of any of the charges due and payable on this Agreement, the remainder of this Agreement, including interest of 1 1/2% per month (18% per year) and attorney's fees accrued thereon, will be accelerated and become immediately payable in full.

23. **DEFAULT** - If any one or more of the following events shall occur, then to the extent permitted by law, the Company shall have the right to exercise any one or more of the remedies set forth below:

    EVENTS:
        [1] Failure to pay any installment due;
        [2] Client and/or its Guarantor becomes insolvent or files for Bankruptcy protection (voluntary or involuntary);
        [3] A receiver, trustee, conservator or liquidator is appointed on behalf of the Client or Guarantor under any Federal or State Law;
        [4] Client's breach of any other section of this agreement and fails to remedy said breach within 10 days after breach.

    REMEDIES: If this agreement shall be breached by the Client or if the Client shall be in default as set forth above, the Company shall have the option to:
        [1] Declare immediately due and payable any unpaid balance, including interest and late charges;
        [2] Without demand or legal process, demand the Client return the equipment;
        [3] Bring action for collection of: damages, expenses, expenses of repossession, if any, including cost of storing, shipping, repairing and insuring said equipment, reasonable attorney's fees, court costs, and interest.

All remedies of the Company are cumulative, and are in addition to any other remedies provided by law. The election of one remedy shall not be deemed a waiver to any other remedies nor shall it preclude the Company from electing any other remedy concurrently. No failure or delay on the part of the Company to elect a remedy shall be deemed a waiver nor shall it modify the agreement.

24. **LATE CHARGES** - In the event that the client shall fail to pay any installment under this agreement within thirty days of its due date, the Client hereby agrees to pay interest of 1 1/2% per month (18% per year) of the late installment. In addition the client agrees to pay an appropriate late charge.

25. **ASSIGNEES/SUBCONTRACTORS OF COMPANY** - Company shall have the right to assign this agreement to any other person, firm or corporation without notice to Client and shall have a further right to subcontract any installation and/or services, including monitoring, which it may perform. Client acknowledges that this agreement, and particularly those paragraphs relating to Company's disclaimer of warranties, maximum liability, limitation of liability, and third party indemnification, inure to the benefit of and are applicable to any assignees and/or subcontractors of the Company, and that they bind Client with respect to said assignees and/or subcontractors with the same force and effect as they bind Client to Company.